**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2178
_____

KELEN CRISTINA OLIVEIRA; HENRIQUE HALLEY SALDANHA; E.C.S.; A.C.S.,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency Nos. A220-637-447, A220-637-448, A220-637-449 & A220-637-455)
Immigration Judge: Richard Bailey
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 1, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES, *Circuit Judges*

(Filed: May 2, 2025)
_____

OPINION[*]
_____

**BIBAS**, *Circuit Judge*.

When Kelen Oliveira was growing up in Brazil, her father and stepmother physically

and verbally abused her. Once she turned fifteen, she moved out, then met and married

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Henrique Saldanha. They had two children, E.C.S. and A.C.S. The family lived in a crime-ridden neighborhood in an apartment above the home of a violent drug dealer, Dede. He was often angry about noise from E.C.S. and once threatened Henrique with a knife over it. Though Henrique tried telling police about the threat, they refused to accept his report and threatened to arrest his whole family if they were called again about the issue. Even after the family moved to a different street, Dede kept asking neighbors about them and threatened them by gesturing that he would cut Henrique's throat.

The family left Brazil and came to the United States illegally. The U.S. government eventually found them and started removal proceedings. They conceded that they were removable but sought asylum, withholding of removal, and protection under the Convention Against Torture. They claimed membership in four particular social groups:

(1) Brazilian females,

(2) immediate family members of Oliveira's father,

(3) Brazilians who report or witness gang crime, and

(4) members of the Oliveira Saldanha family.

They also sought humanitarian asylum based on Oliveira's past abuse by her father and stepmother.

The immigration judge denied relief and ordered the family removed. Starting with the family's asylum claim, he found that the first group was not particular enough because not all Brazilian women are targeted based on their sex. As for the second group, he reasoned that Oliveira had not shown that her biological relationship to her father was a central reason that he abused her; on the contrary, other family members were not abused. The

2

immigration judge then found that membership in the other two groups was not a central reason that the family was threatened either. Dede had targeted the family because they were making noise above his apartment, not because of their family membership itself. And the conflict with Dede predated Henrique's cooperation with the police, so Dede could not have been retaliating for that.

The judge then denied humanitarian asylum, withholding of removal, and protection under the Convention Against Torture. He denied humanitarian asylum because the family had not shown that they were persecuted on account of their membership in a protected group. He denied withholding of removal because the family had not shown that they would be persecuted on these grounds if they were sent back to Brazil. And he denied protection under the Convention Against Torture because the family had not shown that they would be tortured if they returned to Brazil because they offered no evidence that Dede still threatened them; would do so again; or had harmed any of the family's neighbors, who had also reported him to the police. The Board of Immigration Appeals affirmed for the same reasons.

We review the agency's factual findings for substantial evidence, deferring "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020). We review legal issues de novo. *Herrera-Reyes*, 952 F.3d at 106.

The immigration judge and Board were correct. Start with the family's asylum claim. It fails because the family has not shown that they were persecuted because of their membership in a cognizable particular social group. As a rule, a particular social group cannot

3

include all women in a country, because no one could reasonably find that they all reasonably fear persecution based on their sex. *Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 146 (3d Cir. 2021) (leaving open the possibility that an entire sex could qualify but only in rare cases, such as widespread female genital mutilation). And we see no proof that Oliveira's or her family's membership in the other groups was a central reason for any past abuse or fear of future abuse.

On appeal, the family tries to tack on a more precise group: Brazilian women in domestic relationships with men who think that women should live under male domination. But they never identified this group before the agency and so failed to exhaust this argument. 8 U.S.C. § 1252(d)(1). The family argues that it should be excused from the exhaustion requirement because of an intervening change in Third Circuit law. Yet they cite no authority for the premise that a change in law opens up an exception to the exhaustion requirement. Even if it did, the law did not change here. All that happened is that we remanded an asylum claim based on a similar proposed group ("Honduran women in a domestic relationship where the male believes that women are to live under male domination") because the Board did not consider country-specific conditions. *Avila v. Att'y Gen.*, 82 F.4th 250, 263 (3d Cir. 2023). But we did not hold that this group was cognizable. And even if it were cognizable because of specific facts about Honduras, that would not make it cognizable for Brazilians.

The family's other claims fail too. As for humanitarian asylum, the family argues that the Board failed to consider the possibility that they could suffer *other* serious harm if sent back to Brazil. But even if that is so, a remand would be pointless; as the immigration judge explained, the family cannot show that they were persecuted or that they would face serious

harm if returned to Brazil. Without showing either of those, they could not qualify for humanitarian asylum. *Sheriff v. Att'y Gen.*, 587 F.3d 584, 593–94 (3d Cir. 2009). We need not remand because there is no possibility of relief. *Ricketts v. Att'y Gen.*, 955 F.3d 348, 351 (3d Cir. 2020).

Turning to withholding of removal, petitioners have not shown they will be persecuted if returned to Brazil, foreclosing this relief. *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). Finally, they are ineligible for relief under the Convention Against Torture. The Board found that Dede is unlikely to hurt the family in the future, and that finding was supported by substantial evidence. Thus, the family has not shown that they are likely to experience torture. *Herrow v. Att'y Gen.*, 93 F.4th 107, 113–14 (3d Cir. 2024).

We will thus deny the family's petition for review.